EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 541-2023-02502 Rec'd 05/18/2023 |

| Colorado Civil Rights Division | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Daniel James Hines | 724-504-7713 | 01/06/1971 |

| Street Address | City, State and ZIP Code |
|---|---|
| 24174 Sumac Drive, Golden, CO 80401 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| City and County of Denver/Office of Denver District Attorney | 250+ | 720-913-9000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 201 West Colfax Avenue, Denver CO 80202 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| City and County of Denver/City Attorney's Office | 100+ | 720-913-8050 |

| Street Address | City, State and ZIP Code |
|---|---|
| 201 West Colfax Avenue, Denver CO 80202 | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| 08/20/2021 | 05/15/2023 |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*

Please refer to the attached statement.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

_____    _____
Date                                    Charging Party Signature

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*
05/18/2023

SCOTT L WEBSTER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174052651
MY COMMISSION EXPIRES DECEMBER 28, 2025

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

## I.  JURISDICTION

The Colorado Civil Rights Division and Equal Employment Opportunity Commission have jurisdiction over the subject matter of this Charge and the named Respondents, the City and County of Denver. City and County of Denver City Attorney's Office and the Office of the Denver District Attorney, pursuant to the provisions of the Colorado Revised Statutes [C.R.S. 1973, 24-34-301 *et seq.*] as reenacted and Title VII of the Civil Rights Act of 1964 [42 U.S.C. 2000e *et seq.*, as amended.

## II.  PERSONAL HARM

**In October 2022, the Charging Party ["CP"] first learned of the Denver District Attorney's calculated conduct affecting her repeated, discriminatory animus. The CP was subjected to unequal terms and conditions of employment including the employer refusing to utilize its usual and customary procedures, policies, rules, and laws to both investigate and prosecute criminal misconduct visited by the Employer on the CP. The CP attempted to engage in protected conduct and was retaliated against by serial investigations.  The Employer's discriminatory animus was verified by subordinate management.**

## III.  RESPONDENTS' POSITION: Denial

## IV.  DISCRIMINATION

1. The Charging Party's ["CP's"] title/position is Senior Criminal Investigator.

2. The CP's W-2 Employer is the City and County of Denver, Denver District Attorney's Office. the CP work as a Senior Criminal Investigator in the Denver District Attorney's Office.

3. The name "Beth McCann", the Denver District Attorney, comprehends agents and delegates acting at her direction.

4. The CP has been discriminated against and retaliated against based on his sex, national origin, and race.

5. The CP is the victim of direct and indirect discrimination including harassment and intentional victimization by the Denver District Attorney and the Denver City Attorney's refusal to take action in its capacity as the chief legal decisionmaker for the CP's Employer.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

6.    The conduct of the Denver District Attorney has been lawless in several respects.

7.    The CP learned of material wrongdoing in October and November 2022.

8.    Prior to that time, there was an ongoing investigation. The CP's claim of mistreatment was not ripe.

9.    Intelligence concerning the Denver District's Attorney's misconduct first came to light in October and November 2022.

**FIRST ALLEGATION AND INVESTIGATION**

10.    In August 2019, the CP was hired by Beth McCann as a Senior Criminal Investigator, following a 20-year career with the Pennsylvania State Police.

11.    Tim Garner, the Chief Criminal Investigator, was the CP's supervisor within the Investigator ranks.  Garner is a "Public servant", which, by definition, means "*any officer or employee of government, whether elected or appointed, and any person participating as an advisor, consultant, process server, or otherwise in performing a governmental function, but the term does not include witnesses*".

12.    Yujin Choi was a Deputy District Attorney at the Denver District Attorney's Office.

13.    The CP requested a voluntary transfer from County Courtrooms 3A and 3B (office 9.B.6) to District Courtroom 4H (office 8.C.6).

14.    On or about July 20, 2021, this transfer was approved by the Denver District Attorney and the CP officially moved his office from County Courtrooms 3A and 3B (office 9.B.6) to District Courtroom 4H (office 8.C.6).  Chief Deputy District Attorney Effie Antonopoulos was the CP's supervisor in Courtroom 4H.

15.    On/about August 20, 2021, Garner entered the CP's office.  Garner sat down in one of the CP's chairs and asked the CP if he was aware of the allegation Choi made against Deputy District Attorney Kate Tierney a couple of weeks ago.  The CP said he was and added that he was upset and vocal about it.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

16. Garner asked the CP if he had heard that Choi made a sexual harassment allegation against another person. The CP responded, "*Yes. I think it was either Teresa (Aguilar) or Kate (Tierney) who told me.*" The CP explained to Garner that whoever mentioned it to me, he immediately said to that person, "*I don't want to know. The less I know the better (*covering his ears*).*"

17. Garner then just stared at the CP. The CP asked, "*It wasn't me, was it?*" Garner nodded his head. The CP immediately said, "*You have got to be kidding me!!*" The CP expressed his anger and frustration. Garner stated Choi had alleged coming to his office to discuss a "child porn case". The CP immediately said he has never investigated or assisted in a child porn case in this office. Garner explained the alleged incident occurred sometime between June - July 2021.

18. Garner did not provide Garrity warnings (*Garrity v. New Jersey*) to the CP at the onset of his questioning.

19. Garner stated Choi alleged the CP told her he was attracted to Asian women. The CP immediately pointed to his desk phone and told Garner to call his wife. Garner asked why. The CP asked him to call his wife to ask her if he had ever expressed that Asian females were attractive to him. Garner stated he didn't need to call the CPs wife.

20. Garner stated Choi alleged the CP told her, "*If I was single....*". The CP adamantly denied the allegation.

21. Garner asked the CP if he ever sent Choi any texts or emails. Garner stated Choi alleged the CP sent "numerous" texts and emails to her. The CP adamantly denied any harassing emails and/or texts.

22. The CP tossed his cell phone across his desk to Garner and said, "*Dump my phone. Please dump my phone.*" Garner stated he didn't need to dump my phone. At that point, the CP stated, "*Then I have no way to prove I didn't do this. You're not giving me a way to prove my innocence.*"

23. Assistant District Attorney Zach McCabe entered the CP's office and asked if the CP had the opportunity to speak with Garner. The CP stated he had.

24. McCabe asked the CP if there was anything the CP needed to tell them (insinuating the CP had done something inappropriate).

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

25.   The CP explained it was "bullshit" and expressed his anger over it.

26.   McCabe then proceeded to ask the CP if he sent sexually harassing texts to Choi.

27.   McCabe did not provide Garrity warnings (*Garrity v. New Jersey*) to the CP at the onset of his questioning.

28.   The CP remained adamant he didn't and again tossed his cell phone on the desk and begged them to download his phone.

29.   The CP asked if they had physically seen Choi's phone.  They explained they hadn't.   The CP then explained anyone could change their own contact information to anyone else, text themselves, and it would falsely appear as if that person texted them.

30.   McCabe asked the CP if he had a verbal conversation with Choi.  The CP explained he had recalled having a conversation with Choi about a Korean restaurant the CP and his wife used to go to in the Denver area.  The CP explained the restaurant used to serve their favorite dish, spicy squid, but recently had removed it from the menu.  The CP explained he and his wife have been driving to Colorado Springs every couple of months to go to some of the Korean restaurants in that area.

31.   McCabe asked the CP, "*Well why would she say this?*"  The CP got very angry and asked, "*I don't know!  Go ask her!*"

32.   McCabe then asked the CP, "***Don't you think it took a lot of courage for her to come forward?***"  The CP responded, "*Courage of what?  To tell a lie!?*"

33.   McCabe asked the CP, "*Did you ever tell her she reminded you of your daughter?*"  The CP exclaimed, "*My daughter?!*"  The CP stood up (crying), grabbed a picture of his family, and set it down on his desk in front of McCabe and Garner.  The CP pointed at the photo and explained his daughter was a humble, selfless, and kind person and then said, "*That's not Yujin.*"

34.   The CP then asked, "*Do you know whom my daughter reminds me of…?  Kate Tierney!*"  Garner said, "*I remember you telling me that.*"  The conversation ended and McCabe and Garner left the CP's office.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

35.  On/about August 22, 2021, the CP had a conversation with Garner in his office.  The CP was told he was being involuntarily transferred from Courtroom 4H (room 8.C.6) to Courtroom 5F (room 8.G.8).

36.  Garner showed the CP a piece of paper that depicted a screenshot of the only text Choi provided to Garner.  The screenshot depicted an alleged text from Hines to Choi which said, "*Hey do you have time tomorrow morning to chat?*" Again, the CP expressed his innocence and claimed he never sent that text but also expressed the benign nature of the text itself.  Garner agreed to the benign nature.

37.  On August 25, 2021, the CP  printed out a report on a nearby copier.  The CP exited his office and turned to walk toward the copier room.  At the same time, Liza Willis, the Chief of Staff, was walking towards the CP from the other direction.  As they passed, Willis said hello.  The CP didn't look up from his stare at the floor.   The CP entered the copier room and retrieved his paperwork.  As the CP exited the copier room to head back to his office, he noticed Willis standing next to his office door and staring at him.  As the CP approached his office, Willis asked if she could talk to him.  The CP agreed and Willis suggested they walk into his office.  Willis began the conversation and said, "*Please don't hang your head like that*" and added that it bothers her to see the CP walking around like that.  The CP asked her, "*What do you expect me to do?*" and again broke down emotionally.   During the conversation, the CP professed his innocence. Willis suggested, "*Please, go talk to Beth (McCann)*".  The CP asked what he needed to talk to McCann about.  Willis explained McCann may be able to explain things to the CP.  The CP explained he didn't need to talk to McCann because the decision (to involuntarily transfer the CP) was already made, and he was made to feel embarrassed and ashamed.  The CP asked what office he was supposed to move to.  Willis walked the CP over to the eastern side of the building to the office for Courtroom 5F (Room 8.F.11).

38.  On August 25, 2021, the CP moved his office, in compliance with Beth McCann's mandated involuntary transfer.

39.  On September 7, 2021, at the conclusion of the first investigation, the CP met with Willis and Garner and was provided a summary of the allegations and the results of the investigation.  Despite no physical evidence of wrongdoing and the election not to access evidence, the CP was advised, "*There was reason for believing her.*"

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

40. The CP was advised to have no contact with Choi.

41. The CP was advised that he had no choice in the transfer, and it was done "*to make her (Choi) feel comfortable*".

42. The CP was also advised the involuntary transfer was, "*the easiest and quickest way to resolve the issue.*"

43. As the meeting concluded, a senior management official representing Beth McCann told the CP, "*I wished it had not come down to this. I am sorry. I don't know why you are being targeted or why you were.*"

44. Beth McCann's representatives determined at the conclusion of the investigation that the allegations were **not sustained**.

45. The CP continued to express his innocence and again explained that anyone can use their phone number to create a fictitious contact, text themselves, and purport they received a text from that contact.

46. Willis stated to Garner, "*Let's look further into that can we?*" regarding the validity of the text message(s) Choi alleged she received from the CP and provided during the investigation.

47. Unbeknownst to the CP until recently, this more critical review was never consummated by Beth McCann and therefore she elected not to seek or confirm exculpatory evidence offered to her.

48. During the first allegation and throughout the investigation, the questioning and actions taken by Beth McCann's Command Staff repeatedly insinuated Hines was guilty, and an Assistant District Attorney, Yujin Choi (Choi) was innocent.

49. Beth McCann repeatedly referred to Choi as a "*victim*" without obtaining any impeachment or defensive evidence from the CP.

50. No information concerning prior bad acts of the Employer and the Denver District Attorney was disclosed until October and November 2022.

51. The CP stated on more than one occasion that the text message (screenshot) Choi provided to Beth McCann was fabricated.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

52. Beth McCann refused to explore the preceding.

53. The CP offered his phone for forensic analysis on more than one occasion to disprove Choi's allegations.

54. Beth McCann declined to accept the CP's repeated offers, which would have provided irrebuttable evidence the CP had not engaged in wrongdoing.

55. The CP recently learned that Beth McCann never compelled Choi to provide her phone or acquired Choi's phone records to corroborate her allegations against the CP.

56. The preceding involuntary transfer of the CP created a perception of wrongdoing.

57. Beth McCann instituted no privacy protections to protect the CP, thereby allowing many individuals in the office who did not have a need to know to learn of the alleged wrongdoing.

58. The preceding invasion of privacy adversely impacted and still does. It is a continuing violation.

59. A Legal Hold Demand was recently conveyed to Beth McCann.

60. Evidence has been requested under the Colorado Open Records Act including but not limited to all message traffic (electronic and non-electronic) between Choi and Beth McCann, which comprehends all agents and delegates involved in Beth McCann's misconduct.

61. The preceding could not have been accessed during the open investigation or until the investigation reached its final conclusion that Choi engaged in fraud, making serial false statements and submitting counterfeit evidence to law enforcement officials, a statutory violation under

- **C.R.S. 18-8-306, Attempt to Influence a Public Servant**, "*Any person who attempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member.*"

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

- **C.R.S. 18-8-111, False Reporting to Authorities,** "*A person commits false reporting to authorities if: (II) He or she makes a report or knowingly causes the transmission of a report to law enforcement authorities of a crime or other incident within their official concern when he or she knows that it did not occur.*"

- **C.R.S. 18-8-610, Tampering with Physical Evidence:** "*(1) A person commits tampering with physical evidence if, believing that an official proceeding is pending or about to be instituted and acting without legal right or authority, he or she (b) Knowingly makes, presents, or offers any false or altered physical evidence with intent that it be introduced in the pending or prospective official proceeding.*"

62. Beth McCann was preoccupied with protecting Choi, a continuing violation. Instead, Beth McCann without notice or his consent, involuntarily transferred the CP to another courtroom, office, and location.

63. The investigation failed to disclose sufficient evidence to prove or disprove the allegations made in the complaint.

64. This official outcome by Beth McCann permanently damaged the CP's professional career and marketability for future opportunities. It is a continuing violation.

65. The CP immediately looked for employment opportunities to leave the office.

66. Some of the preceding opportunities were solicited while others were unsolicited, based on the CP's previous careers.

67. The CP explored some of these opportunities and took steps to initiate the application process.

68. The CP has been permanently damaged by the choices made by Beth McCann to broadcast, directly and indirectly, the preposterous allegations made by Choi against the CP and the reactive declarations by Beth McCann about her victimization by the CP.

69. Beth McCann issued no instructions and took no affirmative steps to protect the CP during her investigations.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

70. Ultimately, the actual and perceived damages Beth McCann caused the CP through her actions and inactions, damaged the CP's unblemished career, his professional confidence, and actual marketability which has and continues to adversely impact the CP's employment replacement initiatives.

71. The preceding misconduct, which is continuing in nature, states a separate claim for the negligent interference with the CP's economic relations.

72. The Denver District Attorney Beth McCann willfully elected not to substantiate that false statements were being made in her office.

73. The Denver District Attorney affirmatively declined to examine available physical evidence that impeached Choi's contentions or to discipline Choi for making false statements until November 2, 2022.

74. The Denver District Attorney took action against Choi only after the senior command staff and the charging party repudiated her contentions during a second allegation/investigation, which began in October 2022.

75. Beth McCann then aggravated the atmosphere in which for the CP to work as well as seek employment opportunities. She failed to protect the CP from a second allegation.

76. The discriminatory mismanagement and misconduct associated with Allegation 1 put Beth McCann on notice that Allegation 2 had a high probability of being false. Nevertheless, she repeated her discriminatory misconduct in Allegation 2.

**SECOND ALLEGATION AND INVESTIGATION**

77. On October 14, 2022, at 6:00 pm, Choi met for dinner with several other attorneys from the Denver District Attorney's Office.

78. On October 14, 2022, at 6:27 pm, Chief Deputy District Attorney Daniel Cohen (Cohen) received a text message from Choi that stated she has received a "*disgusting*" text message(s) from someone in the office.

79. Cohen asked her to send the text messages to him.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

80. On October 14, 2022, at 6:44 pm, Cohen spoke with Choi by phone. According to the investigative report, the phone call lasted for 15 minutes, and Cohen stated he was "*talking her [Choi] off the ledge*".

81. On October 14, 2022, at 7:11 pm, Chief Deputy District Attorney Melissa Fox (Fox) received a text message from Choi. Choi asked if Fox was available for a phone call.

82. On October 14, 2022, at 7:37 pm, Choi sent Cohen the text messages she allegedly received from Hines.

83. During the dinner, Choi also exhibited and shared the alleged text message(s) with some/all of the attorneys she was having dinner with.

84. The screenshot Choi sent to Cohen indicated she received the first text message, allegedly from the CP, at 7:11 pm.

85. These alleged text messages occurred 44 minutes **AFTER** her initial communication with Cohen at 6:27 pm when she initiated her allegation against the CP. Essentially, Choi had already communicated to Cohen she received these text messages BEFORE the messages actually occurred.

86. In this text conversation, Choi and Cohen communicate presumptions that the CP was using/abusing drugs and/or alcohol. This demonstrates just some of the imposed perceptions of the CP. The damage caused by these slanderous and false perceptions has been documented numerous times in written statements.

87. On October 14, 2022, at 8:00 pm, Fox received text messages sent to Assistant District Attorney Zach McCabe regarding Choi's allegations; however, these messages were never provided during a CORA request.

88. At this point, Beth McCann had communicated with Choi, by text, phone call, and in person about the text messages she alleged she received from the CP.

89. Beth McCann possessed texts, screenshots, and phone calls.

90. With the information Beth McCann possessed, the timestamps on the alleged text messages contradicted the times Choi's initially communicated she received these text messages.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

91. Beth McCann again chose to assume that Choi was a victim (presuming that the CP had engaged in misconduct) and willfully disregarded the physical evidence she actively possessed.

92. On October 15, 2022, at 10:15 am, Fox contacted Choi by phone to check on her.

93. On October 15, 2022, in the morning, Cohen texted Choi to check on her.

94. On October 15, 2022, at 2:00 pm, Choi sent Cohen another screenshot she alleged she received from the CP.

95. In this text conversation, Cohen judgmentally advised Choi "*That's just abusive behavior.*"

96. On October 17, 2022, Fox personally spoke with Choi and advised her that she needed to notify McCabe of the allegations.

97. Choi indicated she understood.

98. On October 17, 2022, Assistant District Attorney Zach McCabe emailed a screenshot of the alleged text messages to Chief of Staff Liza Willis.

99. On October 17, 2022, Chief of Staff Liza Willis (Willis) contacted Chief Investigator Tim Garner (Garner).

100. Willis advised she received a report of sexual harassment.

101. Willis advised she received text messages from a Deputy District Attorney who originally received them from Choi.

102. On October 17, 2022, Garner met with Deputy District Attorney Mary Krenzen (Krenzen).

103. Krenzen provided a statement regarding Choi's allegation against the CP.

104. Krenzen advised she was aware of the previous allegation/investigation against the CP.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

105. Krenzen also provided a statement of conversations she was privileged to and actions she completed.

106. On October 17, 2022, Garner met with Fox.

107. Fox provided a statement regarding Choi's allegation against the CP.

108. Fox advised that she was aware of the previous allegation/investigation against The CP.

109. Fox also provided a statement of conversations that she was privileged to and actions she completed.

110. On October 17, 2022, Garner met with Cohen.

111. Cohen also provided a statement of conversations he was privileged to and actions he completed.

112. On October 18, 2022, Beth McCann's Command Staff confronted the CP with a screenshot of text messages Choi alleged she received from the CP.

113. The CP was not provided Garrity warnings (*Garrity v. New Jersey*) at the onset of the second allegation/investigation.

114. Through a CORA request, it was later learned that this conversation was officially recorded by Garner as part of the official investigation.

115. On October 18, 2022, the CP remained adamant he was innocent and again offered his cell phone for forensic analysis.

116. The CP advised he was at his son's high school football game, at the time of the alleged texts on October 14, 2022, and showed highlight videos to Garner before and after the alleged texts on October 14, 2022.

117. On October 18, 2022, with Garner personally overwatching, the CP logged into his personal *Verizon* family account and provided *Verizon* text and data logs for all available dates, which included the date/time Choi alleged she received text messages from the CP.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

118. The preceding logs provided irrefutable physical evidence the CP was innocent. Garner commented and later documented the lack of data usage on Hines's phone during the timeframe of the alleged text(s).

119. On October 19, 2022, Garner requested the CP to provide his phone for forensic analysis.

120. The CP expressed his frustration with having to repeatedly prove his lack of culpability, even after the text log and data log provided conclusive evidence.

121. The CP consented to the forensic analysis of his phone to determine if his phone contacted Choi's phone. The CP signed a consent to search and provide his screen passcode. Garner left with the CP's phone.

122. The physical evidence from the forensic analysis of The CP's phone provided irrefutable physical evidence the CP was innocent.

123. On October 19, 2022, when the evidence from the CP's phone proved his innocence of Choi's allegations, it simultaneously provided evidence the CP was victimized. The CP repeatedly expressed his desire to pursue criminal charges against the person(s) who were responsible for the repeated allegations against him.

124. The CP acquired the forensic analysis report from a subsequent CORA request. The report indicated a contact for Choi's phone number, 719-393-5269, was created in the CP's phone contacts on February 21, 2020, over a year and a half before the first allegation. The forensic report also indicated Choi's contact was "BLOCKED" in the CP'S contacts on June 18, 2022, almost four months **before** the second allegation. (It should be noted the CP has numerous phone numbers of coworkers and supervisors on his phone and uses them to conduct official business).

125. At this point, based on the acquired physical evidence and desire to pursue criminal charges, Beth McCann was requested to initiate a separate criminal investigation, listing the CP as a victim. McCann intentionally or negligently refused to do so.

126. On October 19, 2022, and October 20, 2022, Choi refused to meet with Beth McCann and her staff.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

127. On October 21, 2022, at 8:00 am, Choi met with Willis and Garner.  Choi
     alleged she didn't feel safe and feared retaliation by the CP.

128. Choi possessed her phone at the time of the meeting.  She stated she had
     allegedly deleted the messages from her phone but had backed up the
     messages to her MacBook, which was located at her residence.  Beth
     McCann completed no steps to secure Choi's phone, even though Choi
     alleged the CP had sexually harassed her, they had physical evidence the
     CP was completely innocent, and Choi had repeatedly exhibited verbal and
     physical resistance to stall the investigation.

129. Choi agreed to bring in both devices on Monday, October 24, 2022, for a
     voluntary forensic analysis.

130. On October 21, 20222 at 12:51 pm, Choi emailed Garner from her iPhone.
     Choi's email contained two screenshot images of the fabricated text
     messages Choi alleged she received from the CP.

131. On October 21, 2022, at 12:51 pm, Choi voluntarily contacted Garner by email
     and stated she had a copy of the message logs she alleged she downloaded
     from her *Verizon* account.

132. On October 21, 2022, at 12:54 pm, while fully aware a formal investigation
     was underway, Choi emailed a copy of her alleged *Verizon* message log(s)
     to Garner and purported them to be genuine *Verizon* logs.  This was the first
     time Choi provided her alleged message log to Garner.  This email stated,
     "*Sent from my iPhone*", which indicated the email (and attached purported
     message log) was sent from Choi's iPhone.

133. On October 21, 2022, at 2:00 pm, Garner examined this message log and
     determined they included the CP's phone number.

134. Based upon the previous message and data logs provided by the CP (with
     Garner's physical oversight), combined with the forensic analysis of the CP's
     physical phone, Beth McCann and the District Attorney Command Staff
     intentionally or negligently failed to conclude that Choi had submitted physical
     evidence which was clearly fabricated and altered to include the CP's cell
     phone number.

135. At this point, Beth McCann intentionally or negligently failed to conclude that
     Choi had deceitfully submitted fraudulent message logs to Chief Criminal

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

Investigator Tim Garner (a public servant) in an attempt to alter or affect Garner's decision, opinion, and action during an official investigation.  Choi committed a felony - **C.R.S. 18-8-306,** *Attempt to Influence a Public Servant*.

136.  Choi's criminal actions are clearly a violation of:

- **C.R.S. 18-8-306,** *Attempt to Influence a Public Servant*, F4 - "*Any person who attempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member.*"

    **Definition:** "Public servant" means any officer or employee of government, whether elected or appointed, and any person participating as an advisor, consultant, process server, or otherwise in performing a governmental function, but the term does not include witnesses.

- **C.R.S. 18-8-111(1)(a)(III),** *False Reporting to Authorities – False Information*, M2 - "*A person commits false reporting to authorities if he she unlawfully made a report or knowingly caused the transmission of a report to law enforcement authorities pretending to furnish information relating to an offense or other incident within their official concern when the defendant knew that (he) (she) had no such information or knew that the information was false.*"

- **C.R.S. 18-8-111(1)(a)(II),** *False Reporting to Authorities – Fake Crime*, M2 – "*A person commits false reporting to authorities if he she unlawfully made a report or knowingly caused the transmission of a report to law enforcement authorities of a crime or other incident within their official concern when the defendant knew that it had not occurred.*"

- **C.R.S. 18-8-114, Abuse of Public Records – False Entry**, M2 – "*Defendant unlawfully and knowingly made a false entry in or falsely altered a public record.*"

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

137. On October 22, 2022, at **3:50 pm**, an Apple Store Work Authorization
(R118407**362**), at Flatiron Crossing, was initiated and emailed to Choi for
Choi's MacBook Air, serial: C02MFB3XG083. The work order authorization
indicated "*Liquid was spilled on Mac, now won't power on*". Additionally, the
work authorization documented, "*Customer does not wish to pursue data
rescue*". It documented the order was handled by employee: 299036**440**.

138. On October 22, 2022, at **4:35 pm**, Assistant District Attorney Maggie Conboy
(Conboy) sent Garner an email. Conboy told Garner that Choi had contacted
her supervisor and stated she planned to "*reset her phone over the weekend*"
and that Choi was considering revoking her consent to look at her phone
(scheduled for October 24, 2022).

139. Although Choi had clearly expressed her intent to impose further subterfuge,
in an attempt to evade and avoid the investigation, Beth McCann and the
District Attorney Command Staff intentionally or negligently failed to take
steps to secure Choi's phone and MacBook which they knew contained
physical evidence.

140. On October 22, 2022, at **7:15 pm**, an Apple Store Work Authorization
(R118407**384**) was initiated and emailed to Choi for Choi's iPhone, 13 Pro
Max, serial: VYD7XP6C6Y. The work order authorization indicated
"*Customer states device fell in the bathtub while hot water was running*".
Additionally, the work authorization documented, "*Customer does not wish to
pursue data rescue for messages*". It documented the order was handled by
employee: 973525**763**.

141. **Although occurring on the same date, these work orders were initiated
3 hours and 25 minutes apart from one another. The second work order,
completed at the same Apple store, was sequentially twenty-two (22)
work orders after the first work order. Lastly, each work order was
completed by a completely different Apple Employee. One work order
said the device had water spilled on it while the other work order stated
the device was submerged in standing water in a bathtub.**

142. On October 22, 2022, at **7:45 pm**, according to an Apple receipt, Choi
purchased an iPhone 13 ProMax, serial LI4M92NG6K.

143. On October 22, 2022, at **9:31 pm**, Choi sent an email to Garner and Willis.
Choi stated her phone was submerged in hot water and her MacBook
sustained significant water damage. Choi stated, "*My damaged phone is with*

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

*Apple **to see if they could recover anything**, but I was told it was unlikely since the motherboard, especially the CPU and memory functions were all significantly damaged."* This contradicts Apple's documentation of the customer's instructions.

144. In the face of this highly compelling criminal misconduct, the CP has cause to believe this information was withheld from the Larimer County District Attorney's Office. Despite this, Beth McCann also did not discontinue her pursuit of the CP and continued to victimize him.

145. Choi alleged she lost all data and backups.

146. Choi alleged she had to get a new phone and her MacBook was completely wiped.

147. Choi intentionally attempted to destroy and conceal physical evidence.

148. Beth McCann and the District Attorney Command Staff intentionally or negligently failed to take steps to secure Choi's phone after they were aware of Choi's intentional actions to destroy physical evidence and were advised of the location of both devices.

149. Choi's documented communication and actions demonstrated motive, intent, and deliberate action to destroy physical evidence. Her actions are a clear violation of:

   • **C.R.S. 18-8-610,** *Tampering with Physical Evidence: "(1) A person commits tampering with physical evidence if, believing that an official proceeding is pending or about to be instituted and acting without legal right or authority, he:**(a)** Destroys, mutilates, conceals, removes, or alters physical evidence with intent to impair its verity or availability in the pending or prospective official proceeding.*

150. On October 24, 2022, at 3:20 pm, McCabe and Garner met with Choi to have her download her message logs from *Verizon* Wireless in their presence. Choi alleged she was unable to because she was on a family plan and didn't have access. Choi agreed to meet them on October 25, 2022, at 8:00 am.

151. On October 25, 2022, McCabe and Garner met with Choi at 8:00 am. Choi provided copies of her alleged *Verizon* message logs. These logs also contained the CP's phone number. This was the second time Choi had

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

submitted fraudulent message logs during an official investigation. Again, Beth McCann intentionally or negligently failed to conclude that Choi had deceitfully submitted fraudulent message logs, for the second time, to Chief Criminal Investigator Tim Garner (a public servant) in an attempt to alter or affect Garner's decision, opinion, and action during an official investigation. Choi committed a felony - **C.R.S. 18-8-306, *Attempt to Influence a Public Servant***.

152. On October 25, 2022, Chief Deputy District Attorney Danielle Robinson (Robinson) went to Garner's office. At the time, Robinson was Choi's immediate supervisor.

153. Robinson provided Garner with the dramatic change she observed in Choi between October 21, 2022, and October 25, 2022.

154. Robinson stated Choi was very emotional on October 21, 2022, when Choi told Robinson she was contemplating resetting her phone.

155. Robinson stated Choi now gave her the impression she had "*gotten by*" with something.

156. On October 25, 2022, Garner authored a search warrant to *Verizon* for records for Choi and Hines's phones.

157. In the search warrant affidavit, Garner documented, "*Your affiant thoroughly investigated a prior sexual harassment complaint made by DDA Choi against Investigator Dan Hines in August of 2021. The outcome of this investigation **resulted in a written reprimand to Investigator Hines'** file stating he should be more aware of his language in the future.*"

158. Garner's sworn statement, in an official court document, is completely false, inflammatory, and prejudicial against the CP. **The CP was never issued a Written Reprimand.** Beth McCann has never changed this statement with the courts and it, in of itself, has imposed a deleterious impact on the CP and his professional career.

159. On October 26, 2022, at approximately 7:00 am, the CP left the office coffee area on the 8th floor. As he walked back to his office, he encountered Assistant District Attorney Zach McCabe. McCabe asked the CP, "*How are you holding up?*" The CP responded, "*Not good...*" McCabe stated he understood, and they hoped to have some answers for the CP by the end of

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

the week.  The CP explained, "*We could have had those answers when this happened before*".  McCabe casually nodded and told the CP to, "*Hang in there*".  The CP walked away.

160. On November 1, 2022, the results of a search warrant to *Verizon* for the CP's and Choi's phone, produced records that conclusively proved the CP was not culpable and that Choi had fabricated the alleged text message(s) and texted her own phone number, 719-393-5269, and maliciously purported she had received the text(s) from the CP.

161. On November 2, 2022 at approximately 9:00 am, Choi was terminated by McCabe and Garner.  Choi's termination letter, dated November 2, 2022, in part reads, "*The evidence obtained in our investigation clearly shows that you fraudulently created text messages that appeared to be sent to you by DH, in an effort to cause him to be dismissed from employment for sexual harassment.*"

162. On November 2, 2022, at 12:42 pm, Garner conducted a search for the word "messagelogs" on Choi's issued Denver District Attorney laptop.  The search results indicated Choi had versions of purported message logs on her Denver District Attorney work computer.  The logs were modified on 10/24/22 at 3:47 pm, 10/24/21 at 8:11 pm, 10/25/22 at 7:58 am, and 10/25/22 at 8:46 am.

163. The CP has cause to believe this information was withheld from the Larimer County District Attorney's Office.

164. Beth McCann has never offered the CP a public apology.

165. Instead, on November 2, 2022, McCann sent the following statement altered to mitigate the significance of Choi's misconduct to the employees of the Denver District Attorney's Office.  "*As some of you know, Yujin Choi is no longer an employee of this office.  Her departure arose as a result of serious allegations made by Ms. Choi against a member of the office.  These allegations were investigated over the last two weeks and found not to be true.  Ms. Choi's conduct was not in accordance with the values and standards of this office.  While we have discussed this matter with others who were directly involved, please be sensitive to the reputations of those involved and refrain from discussing the matter.  If you have any questions please see me, Maggie, or Zach (Liza is out of the office this week).*"

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

166. Beth McCann's statement was crafted to avoid truthfully disclosing the fact that Choi had engaged in what was clearly malicious and fraudulent behavior.

167. Beth McCann's choice of wording mislead the readers away from the otherwise ineluctable conclusion that Yujin Choi had engaged in a misprision amounting to felonious behavior. Beth McCann provided instruction to protect the reputation of Choi, Beth McCann, and the office. It failed to provide an apology to the CP.

168. On November 2, 2022, Assistant District Attorney Maggie Conboy (Conboy) made two phone calls to the CP's cell phone. Conboy provided the CP with an explanation of her official actions that date, official conversations she had with select office personnel, and the official statement she provided to select office personnel. The CP explained to Conboy that Senior Criminal Investigator Teresa Aguilar had already heard some personnel (attorneys) do not believe/trust the CP.

169. These damages the CP continues to experience, regarding the mistrust Beth McCann imposed on the CP, were later documented in a written statement from Senior Criminal Investigator Shawna Treasure as well as communicated to the CP.

170. On November 8, 2022, Beth McCann made comments to the CP which minimized her failures to this point, attempting to justify the acceptance of allegations and McCann's labeling of Choi as a victim without physical evidence or merit during the first allegation/investigation resulted in demeaning the CP. McCann reasoned, "…*lawyers, in particular, we're sworn to be you know honest and truthful and all of that…*" The CP stated, "*And so are police officers.*" McCann advised the CP that he wouldn't understand and stated, "*When you're in management, this whole sexual harassment thing is so sensitive.*"

171. The CP reminded McCann that he retired as a Captain with the Pennsylvania State Police and was the commanding officer of approximately 280 personnel, which spanned over four counties and six State Police stations. The CP explained the involuntary transfer, as a result of the first investigation, was punishment and thus has continued to harm the CP, physically, emotionally, and professionally.

172. Beth McCann's decision-making in the Choi events cannot be found in any recognized management treatise.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

173. On November 15, 2022, Beth McCann advised the CP she was not going to pursue criminal charges against Choi and felt Choi's actions were not criminal.

174. Instead, McCann advised the matter would be referred to the Colorado Attorney Review Committee. Numerous members of Beth McCann's Command Staff and staff (attorneys and criminal investigators) within the Denver District Attorney's Office have expressed their belief that Choi's actions were clearly intentional, malicious, and criminal in nature.

175. McCann suggested the CP not let someone dictate his happiness for the rest of his life and suggested he move forward.

176. On November 15, 2022, the CP submitted the first CORA request. He requested a copy of his entire personnel file and the entire investigative reports for both allegations/investigations, including any and all related attachments which may include screenshots, emails, hand-written notes, internal communication, journals, audio and video recordings, and electronic files.

177. The results from the first CORA request include the first investigation, which consisted of a three-page report, and did not document any of the CP's interviews by Garner and McCabe. The report also failed to document the conclusion of the investigation.

178. The personnel file also failed to document that the CP was involuntarily transferred. Transfer documentation within the CPs personnel file intentionally omitted his involuntary transfer from County Courtrooms 3A and 3B (office 9.B.6) to District Courtroom 4H (office 8.C.6). It appears as if it never existed.

179. This fabricated documentation makes it appear the CP transferred directly from County Courtrooms 3A and 3B (office 9.B.6) to Courtroom 5F (room 8.G.8).

180. On November 16, 2022, the CP sent an email to Beth McCann and her Command Staff. The CP explained the hurt imposed by McCann's decision to not prosecute Choi. The CP argued that Choi's actions were intentional and criminal. The CP asked for the matter to be referred to another district for a prosecutorial decision.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

181. On November 16, 2022, the CP received an email from Garner. Garner wrote, "*First I've heard of no prosecution.*"

182. On November 16, 2022, the CP went to Garner's office. Garner was noticeably upset. Garner pointed at his open Colorado Revised Statutes (C.R.S.) book and said he reviewed the potential criminal charges and opined "*They fit!*" He also stated, "*I'm so angry I could spit.*" Garner advised after he received the CP's email, he sent a scathing email to the "Front Office" (Beth McCann, Maggie Conboy, Zach McCabe, and Liza Willis) that could jeopardize his job.

183. On November 16, 2022, the CP was approached by Chief Deputy District Attorney Melissa Fox. Fox told the CP, "*I'm sure you know by now about my involvement in the investigation*". The CP stated he didn't and said, "*Actually, I have no idea who is or isn't involved*" and expressed his understanding she felt she had to report an allegation of this nature. She explained she and Deputy District Attorney Mary Krenzen provided statements. She then explained she was so sorry for all that the CP and his family had to go through. The CP explained how it changed him professionally and personally since the first allegation. Fox had tears welling up in her eyes and said, "*It must have been hell.*"

184. On November 16, 2022, the CP received an email from Beth McCann. McCann stated, "*Thank you for the email Dan. I had asked Bob Russel to look at this previously. I will ask him to take another look.*"

185. On November 16, 2022, the CP received a phone call from Beth McCann. During the phone call, McCann stated, "*We were always going to refer if we thought there was a potential criminal case. We weren't going to make that ultimate decision, uh, in the office. But we were not going to refer it out because we weren't seeing that um we had the evidence for a criminal case. But going through a little more carefully, uh, we decided that it was, I decided that we would, um, it was better to have it looked at independently and have someone else make the cho decision about that.*"

186. On November 17, 2022, Beth McCann's Chief of Staff, Liza Willis, met with the CP. Willis advised the CP, "*After the first one (investigation) I knew there was something hinky*" and they always knew "*something was weird with Yujin*".

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

187. The CP explained he was upset over Beth McCann's decision to not pursue criminal prosecution. Willis stated, "*Rightfully so*" and she heard about that when she returned from vacation. Willis stated, "*I was in shock.*"

188. Willis advised the CP that Beth McCann failed to provide Chief Deputy District Attorney Robert Russell (Russell) with all of the facts from the investigation, which initially prompted Russell to provide McCann with an uninformed recommendation to not pursue criminal charges.

189. Once Russell was provided with all of the information, the matter was referred to Larimer County for a prosecutorial decision. It should be noted, the CP was originally advised the matter would be sent to the Arapahoe County DA's Office.

190. Willis also told the CP Beth McCann knew of existing issues with Choi and stated, "*There were some other signals I received from Yujin back before that all came up.*"

191. Willis advised she and Garner consulted with Karla Pierce, from the Denver City Attorney's Office, during the first allegation. Willis stated, "*And. Tim (Garner) and I you know convinced her (McCann). We did meet with the City Attorney, and she (Karla Pierce) said, Ah, this doesn't sound like he (Hines) did it. I said, he didn't Karla. Not from what we got. And he's adamant.*"

192. While Karla Pierce had the legal authority to instruct the Office of the District Attorney what to do, she did not and allowed Beth McCann to continue on an irregular path with respect to managing Choi from the organization.

193. Willis stated they provided their findings and beliefs to Beth McCann. **Beth McCann dispelled the beliefs of her Command Staff and Karla Pierce and, according to Willis, made the presumptive comment, "*But she's (Choi) a victim*", which simultaneously imposed culpability on the CP**.

194. On November 28, 2022, the CP submitted his second CORA request. The CP explained there were missing items from the first CORA request and requested missing documentation, court documents, cell phone carrier evidence, and digital evidence from both investigations. The CP also requested Choi's termination letter and a documented conclusion/outcome of the first investigation.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

195. On November 30, 2022, Tim Garner generated an Investigative Report that documented, "*On September 7, 2021, Chief of Staff Liza Willis and I met with Investigator Dan Hines in the 8th-floor bow conference room regarding this investigation. At that time, Hines was informed that we had completed the investigation. As a result, no disciplinary action was taken. Further, Hines was advised to avoid contact with Choi as much as possible. **This case is concluded as Unfounded.**"*

196. Garner's report, **which was completed 419 days after the actual meeting**. Altering the official outcome of the first investigation from UNSUBSTANTIATED to UNFOUNDED was contradictory to the original outcome and clearly is an attempt at damage control for Beth McCann. These terms have very different legal meanings and implications.

197. Garner's report also contradicts his sworn statement in the search warrant affidavit, from October 25, 2022, where he stated, "*Your affiant thoroughly investigated a prior sexual harassment complaint made by DDA Choi against Investigator Dan Hines in August of 2021. The outcome of this investigation resulted in a written reprimand to Investigator Hines' file stating he should be more aware of his language in the future.*"

198. As a result of the second CORA request, Hines received a substantial amount of documentation, records, and digital evidence that wasn't received from his first CORA request.

199. On or about January 13, 2023, Garner provided the CP with the prosecutorial decision from the Larimer County District Attorney's Office. Garner verbally advised the CP he completely disagreed with the conclusion and was apologetic to the CP. The letter was authored by Assistant District Attorney Matt Maillaro. ADA Maillaro only reviewed the second investigation and concluded to not pursue criminal charges against Choi. A background review of ADA Maillaro and Beth McCann has revealed previous programs and political connections they share and participated in with one another.

200. The Larimer County decision letter of ADA Maillaro's review either intentionally or negligently omitted numerous key elements:

   • Maillaro failed to document Choi's texts to Cohen occurred 44 minutes **before** she texted herself and then provided the screenshot to Cohen.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

- Maillaro documented that the first allegation/investigation in August - September 2021 was "*marginally relevant*". The prior allegation/investigation clearly shows a continued course of conduct and intent to repeatedly revictimize the CP.

- Even though Maillaro advised the previous allegation/investigation was "*marginally relevant*", Maillaro then used Choi's perception of the previous investigation to defend Choi's motive to withdraw or become "*less interested*" in the second investigation as it progressed.

- Maillaro intentionally or negligently failed to document Choi's first fabrication of physical evidence. Choi sent Garner an email (unsolicited) on 10/21/22 and submitted fraudulent *Verizon* message logs to Garner. These logs were later proved to be fabricated evidence.

- Maillaro intentionally or negligently failed to document Choi's intent to destroy physical evidence. On 10/22/22, Assistant District Attorney Maggie Conboy (Conboy) sent Garner an email, which stated Choi had contacted her supervisor and stated she planned to "*reset her phone over the weekend*" and that Choi was considering revoking her consent to look at her phone.

- Maillaro intentionally or negligently failed to document Choi's second fabrication of physical evidence. Choi voluntarily provided a second set of fraudulent *Verizon* message logs to Garner and McCabe on 10/25/22. These logs were also later proven to be fabricated evidence.

- Maillaro intentionally or negligently failed to document that the Apple work authorizations were initiated 3 hours and 25 minutes apart from one another. The second work order, completed at the same Apple store, was sequentially twenty-two (22) work orders after the first work order. Lastly, each work order was completed by a completely different Apple Employee.

- Maillaro intentionally or negligently failed to document Choi's efforts to continue her attempt to conceal physical evidence. Maillaro intentionally or negligently failed to mention the *Apple* store work authorizations which documented, "*Customer does not wish to pursue data rescue for messages*".

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

- Maillaro continually referred to Choi as a victim and defended her reluctance to continue or cooperate with the investigation was based upon fear and/or embarrassment.

201. All phone, email, and text records between Beth McCann's phones, office, and personal, as well as her personal and office's texts and emails and the Larimer County District Attorney's Office, are the subject of a CORA request.

202. On or about February 7, 2023, the CP called the Colorado Office of Attorney Regulation Council regarding the office's obligation to report Yujin Choi. The CP inquired for confirmation that Beth McCann reported Choi to their office. The Colorado Office of Attorney Regulation Council couldn't confirm or deny a report was filed.

203. On February 13, 2023, the CP submitted his third CORA request. The CP requested the point of contact for all communication between Beth McCann, the Denver District Attorney, and the Colorado Office of Attorney Regulation Council regarding the office's obligation to report Yujin Choi to the Office of the Attorney Regulation Counsel. The CP also requested all, investigative reports, texts, emails, screenshots, and communication between Beth McCann and Denver County Judge Espinosa and an unnamed defense counsel, regarding previous sexual harassment allegations by Choi against Judge Espinosa and the unnamed defense counsel, whom Choi also made sexual harassment allegations against.

204. On March 10, 2023, the CP received a response from Beth McCann (Records Department) for the CP's third CORA request. The statement, in part, reads, "*Regarding section one of your request, we are unable to provide any responsive records at this time. The investigation is ongoing and thus the requested material remains confidential until the conclusion of the investigation. C.R.C.P. 242.41. Please be advised we have no responsive records for your request pertaining to correspondence between internal staff and Judge Espinosa.*"

205. Upon information and belief, we believe Beth McCann and the Denver District Attorney's Office never formally submitted the matter to the Colorado Attorney Review Committee.

206. On April 12, 2023, the CP walked to the coffee machine/break area on the 8th floor. As the CP approached the break area, he noticed Assistant District Attorney Maggie Conboy (Conboy) speaking to someone else who was just

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

out of his view. Conboy finished the conversation and turned towards the CP just as he was about to approach the coffee machine. As she turned towards the CP, he noticed her face immediately became stern looking. The CP sensed an uneasiness. The CP motioned his arm/hand towards the coffee machine, for Conboy to go first, and the CP walked a few feet away to look outside. A few seconds later, the CP heard, "*Dan?*" The CP replied, "*Yes ma'am*" and turned towards her. As she held her coffee, Conboy stated, "*When I called you, it was as a friend.*" Confused, the CP said, "*Excuse me?*" Conboy repeated, "*When I called you that night, it was a friend.*" Conboy immediately turned and walked away. As the CP was pouring his coffee, he heard a door loudly close in the direction of Conboy's office. A few moments later, the CP walked past Conboy's office, and her door was now closed. The CP realized Conboy was offended because the CP recorded the conversations on November 2, 2022.

207. Conboy's conversation with the CP on November 2, 2022, was soley to provide the CP with an explanation of her official actions that date, official conversations she had with select office personnel, and official statements she provided to select office personnel.

208. Conboy's confrontational comments towards the CP caused the CP to experience emotional stress and prompted him to submit Personal Time Off (PTO) leave for the remainder of the day.

209. Conboy's comments and actions clearly indicate Beth McCann's continued aggressive posture and hostility towards the CP.

210. As of May 4, 2023, Beth McCann has not removed Choi from the official registry with the Colorado Supreme Court, Attorney Registry. Choi was listed as ACTIVE with the Denver District Attorney.

211. On May 6, 2023, the CP submitted his fourth CORA request. The CP requested Choi's personnel file. The CP requested all communication related to this matter between Beth McCann, Maggie Conboy, Zach McCabe, Liza Willis, Tim Garner, and Yujin Choi. The CP also requested any unemployment claim Choi submitted and the results of said claim. The CP also requested the "Written Reprimand" the CP allegedly was issued, as sworn to in the search warrant affidavit, dated October 25, 2022.

212. Upon information and belief, Yujin Choi applied for unemployment benefits by making false representations and making her subject to criminal

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

prosecution under Labor and Industry, Title 8-1-144, **Penalty for False Statements**.

213. Beth McCann was under a legal mandate, by statute, to oppose the application for unemployment benefits. It is a misdemeanor to mislead the Colorado Department of Labor and Employment, especially so when criminality is involved. A CORA request is pending for this information.

214. The Denver District Attorney Beth McCann knowingly elected not to substantiate false allegations or to examine available unimpeachable, physical evidence that repudiated Choi's contentions.

215. Instead, McCann assumed a presumption of the CP's culpability as a white, non-Asian male.

216. Beth McCann's prior dismissals of males, upon information and belief, do not resemble what she did in this case.

217. The charging party has serial knowledge of false reporting on less sufficient evidence. The charging party makes this observation of criminally charged males by the District Attorney, which substantiates animus toward the CP.

218. The CP recently learned that Beth McCann ordered and approved the CP's involuntary transfer. Her actions directly caused the CP to experience extreme emotional distress, mental anguish, personal and professional isolation, and professional marketability damage.

219. Beth McCann created a known, identified, and persistent harmful atmosphere for the CP to work and seek employment opportunities and failed to protect the CP from a second allegation. Residual fallout is continuing.

220. The District Attorney persisted in declining criminal prosecution which harmed the public because she did not seek a restitution order for all of the lost personnel hours that were dedicated to this these investigations, further supporting her bias toward Choi.

V. WHEREFORE, The CP prays that the agencies identified herein, the City and County of Denver, the City and County of Denver City Attorneys Office and the Office of the Denver District Attorney, be ordered by the CCRD and/or the EEOC to provide all relief proved by the CP to be actionable and within the CCRD's and EEOC's power to remediate.

Daniel Hines
EEOC Charge
May 18, 2023
EEOC Inquiry Number 541-2023-002502

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) 05/18/2023 |
| _____        _____
Date        Charging Party Signature | SCOTT L WEBSTER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174052651
MY COMMISSION EXPIRES DECEMBER 28, 2025 |