

| | |
|---|---|
| **DEPARTMENT OF LAW**<br>Kerry Tipper<br>City Attorney | Employment & Labor Law Section<br>201 West Colfax Avenue, Dept. 1108<br>Denver, CO 80202-5332<br>p: 720-913-3125<br>f: 720-913-3182<br>f: (W.C.) 720-913-3190 |

July 26, 2023

**VIA RESPONDENT PORTAL**
Matthew Nitta
Equal Employment Opportunity Commission
Denver Field Office
303 East 17th Avenue, Suite 410
Denver, Colorado 80203

Re:   Charging Party: Daniel James Hines
      Respondent: City and County of Denver/Office of Denver District Attorney
      Charge No. 541-2023-02502

## POSITION STATEMENT

Dear Mr. Nitta:

      We represent the Respondent, City and County of Denver (the "City") and Office of Denver District Attorney ("DDA") in the above-captioned EEOC Charge. Please accept this letter as the City's Position Statement in response to Charging Party's allegations.[1] Contrary to Charging Party's assertions, the City did not discriminate against him based on his race, national origin, age or sex, nor did the City retaliate against him for engaging in any alleged protected activity. The City is committed to equal opportunity regarding all aspects of employment. All employment-related decisions have been based on legitimate, non-discriminatory reasons. Therefore, the City respectfully requests that this Charge be dismissed in its entirety.

All future correspondence regarding this matter should be addressed to:

Charles T. Mitchell, Assistant City Attorney
Denver City Attorney's Office
201 W. Colfax Avenue, Dept. 1108
Denver, Colorado 80202
Chales.Mitchell@denvergov.org

---

[1] This position statement and the responses attached hereto are provided to the Commission in the furtherance of the City's obligations to investigate and mediate the issues in the charge. It is prepared with the information available at the time of its writing. The information provided herein is confidential and should not be provided to anyone outside of the Commission except as required by law. The City reserves the right to make other arguments or defenses or to put forth other evidence as may be available if this matter proceeds to litigation and further information is uncovered. The material herein is provided in order to further mediation or settlement and as such cannot be used as evidence under FRE or CRE 408.

Matthew Nitta
July 26, 2023
Page 2

## I.   GENERAL BACKGROUND

This charge was commenced by Daniel Hines ("Charging Party"), who is currently and, at all relevant times, remains continuously employed by the City as a Senior Criminal Investigator with the DDA. As a Senior Criminal Investigator, Charging Party supports the criminal prosecutions of Denver's District Attorney, Beth McCann, and her Deputy District Attorneys by performing full performance level criminal investigation work. Charging Party became the subject of an internal investigation in 2022 as a result of a complaint raised by former Assistant District Attorney ▮▮▮▮, who alleged claims of sexual harassment. All claims were promptly investigated, determined to be unfounded and untrue, and ▮▮▮ was terminated as a result of her false allegations directed toward Charging Party. Charging Party was cleared of all ▮▮▮ false allegations and suffered no adverse employment action as a result of the incident. Charging Party, a Caucasian male, now alleges reverse discrimination on the basis of race, national origin, sex, and age, and retaliation.

### A.   The City's Discrimination and Retaliation Policies

The City recognizes and declares that it is the right of every employee to work in a professional environment, free from any form of discrimination, harassment, retaliation or intimidation. The City's discrimination and retaliation policies are set forth clearly in the Career Service Rules for the Career Service Authority for the City and County of Denver ("CSA"), the administrative forum that serves the City's employees and agencies within the CSA.

Rule 16 of the Career Service Rules, entitled *Code of Conduct and Discipline*, states in relevant part:

16-22   Harassment, Discrimination, and Retaliation

A.   Protected Characteristics

Career Service employees have a right to work in an environment free of discrimination and harassment based on their race, color, religion, creed, national origin/ancestry, sex, sexual orientation, transgender status, gender identity and expression, disability, genetic information, military status, age, marital status, political affiliation, pregnancy or related condition, or any other status protected under federal, state, and/or local law. These characteristics are referred to as "Protected Characteristics".

B.   Discrimination

Discrimination occurs when an employee experiences an adverse employment action based on one or more of an employee's Protected Characteristics. Adverse employment actions include, but are not limited to, termination, suspension, involuntary demotion, and failure to promote. Adverse employment actions that are taken for any reason other than an employee's Protected Characteristic(s) are not discrimination.

Matthew Nitta
July 26, 2023
Page 3

> Behavior may violate this Rule 16-22 B even if it would not constitute a violation of federal, state, or local law.
>
> . . .
>
> D.   Retaliation
>
> Retaliation against employees for reporting or threatening to report harassment or discrimination or assisting the City in the investigation of any complaint is strictly prohibited. Retaliation can include, but is not limited to, unwarranted discipline or unfavorable performance ratings, hostility from co-workers, and escalating harassment. Any employee engaging in retaliation may be subject to discipline, up to and including dismissal. Behavior may violate this Rule 16-22 D even if it would not constitute a violation of federal, state, or local law.

II.   **MANY ALLEGATIONS IN THE CHARGE MUST BE DISMISSED AS UNTIMELY**

As an initial matter, many of the allegations in Charging Party's Charge are barred from consideration because they occurred more than 300 days prior to the filing of the Charge. An employee has a mandatory duty to file an EEOC charge before commencing litigation. 42 U.S.C. § 2000e-5(e)(1) ("Title VII"), 29 U.S.C. § 626(d). Specifically, an employee who alleges an unlawful employment practice must file his charge within 300 days after the practice occurred. 42 U.S.C. § 2000e-5(e)(1). "[A] Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period – [ ] 300 days – set forth in 42 U.S.C. § 2000e-5(e)(1)." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). A discrete act of discrimination occurs on the day it happened. *Id.* at 116-17. Each incident of discrimination constitutes a separate, actionable "unlawful employment practice" for which administrative remedies must be exhausted. *Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003).

Charging Party filed his Charge on May 18, 2023. Friday, July 22, 2022, is 300 days before May 18, 2023, and represents the deadline for actionable discrete acts of discrimination and retaliation. All allegations of discrimination and retaliation that occurred prior to July 22, 2022, are time barred. Therefore, pursuant to 42 U.S.C. § 2000e-5(e)(1), all alleged 2021 acts of discrimination and retaliation Charging Party identifies in his Charge, including those allegations associated with the DDA's investigation and resolution of ▇▇▇ unfounded 2021 claims of sexual harassment, are time barred. *Id.* (*See* Charge, ¶¶ 10-76) (2021 allegations identified in the Charge section as "*First Allegation And Investigation*").

To the extent Charging Party attempts to salvage these untimely allegations by generally labeling them a "continuing violation" (*see* ¶¶ 62, 64), the investigation of ▇▇▇ 2021 allegations was fully known to Charging Party, resulted in a finding of "not sustained", and the matter was closed more than a year before the separate 2022 incident described in Charging Party's May 18, 2023 Charge. Charging Party protested the 2021 investigation at the time and even though he did not suffer any adverse employment action in 2021 as a result of the investigation, he could

Matthew Nitta
July 26, 2023
Page 4

have filed a charge at that time if he felt he had been injured in some way. By not doing so, Charging Party has abandoned those claims. In sum, the allegations in paragraphs 10-76 are time barred. *See National R.R. Passenger Corp.*, 536 U.S. at 116-17; *Martinez*, 347 F.3d at 1210-11 (finding each incident of discrimination constitutes a separate, actionable unlawful employment practice for which administrative remedies must be exhausted).

### III.  RESPONSE TO CHARGING PARTY'S TIMELY ALLEGATIONS

Charging Party's 30-page Charge is voluminous in its 220-paragraph anecdotal narrative and the City believes it is unproductive to engage in a line-by-line rebuttal of the allegations. Nonetheless, the City respectfully disputes Charging Party's characterization of events and the substance of all material allegations. In rebuttal, the City states as follows:

1. On or about October 17, 2022, the DDA was notified of a complaint of sexual harassment raised by former Deputy District Attorney ▇▇▇▇. **Exhibit 1** (Investigative Report).
2. The complaint involved allegations of harassing and sexually suggestive emails allegedly sent by Charging Party to ▇▇▇▇. **Ex. 1**
3. DDA promptly investigated the allegations, including interviews of individuals with relevant knowledge and a review of relevant documents, text messages and phone records. **Ex. 1**
4. The two-week investigation was completed in a timely manner on November 1, 2022. After reviewing all of the evidence, the City determined by a preponderance of the evidence that ▇▇▇▇ was fabricating the allegations and supporting them with counterfeit text messages created to give the false impression that they had been sent by Charging Party. **Ex. 1**
5. On or about November 2, 2022, ▇▇▇▇ was promptly terminated from her employment with the City. **Ex. 1**; **Exhibit 2** (▇▇ Notice of Dismissal); Charge, ¶ 161.
6. Also on November 2, 2022, DDA Beth McCann sent an email statement to the DDA office, notifying personnel that ▇▇▇▇ had been dismissed for making untrue allegations against a member of the office, and provided assurances that her actions were not in accordance with the values and standards of the office of the DDA. *See* Charge, ¶ 165.
7. In addition, on December 2, 2022, DDA Beth McCann requested the 8th Judicial DA's Office to review the incident for possible criminal charges against ▇▇▇▇. *See* **Exhibit 3** (Memo from ADA Matt Maillaro RE: Referral to 8th JD DA – former employee, ▇▇▇▇). After reviewing the evidence, ADA Maillaro concluded that the conduct of ▇▇▇▇ was morally, professionally and ethically concerning, but for the reasons stated in the memo, the 8th JD declined to prosecute. **Ex. 3**
8. Finally, in December 2022, DDA Beth McCann made a formal request of the Colorado Supreme Court Attorney Regulation Counsel for an investigation of ▇▇▇▇ for potential ethics violations. Attorney Regulation Counsel Case No. 22-3437 is ongoing. **Exhibit 4.**

Case No. 1:24-cv-03468-RMR-MEH   Document 1-3   filed 12/16/24   USDC Colorado
pg 5 of 10

Matthew Nitta
July 26, 2023
Page 5

9. Throughout the period at issue, Charging Party did not suffer any adverse employment action or any other significant change in employment status, such as discipline, demotion, firing, failing to promote, a significant change in job responsibilities or a decision causing a significant change in benefits.

## IV. LEGAL ARGUMENT

### A. Claims Associated With The "First Investigation" Are Time Barred

To start, Charging Party's allegations of discrimination related to the "First Allegation and Investigation" (Charge ¶¶ 10-76), are time barred for the reasons set forth above. An individual has a maximum of 300 days from the date of the alleged harm to file a charge with the EEOC. *See Bullington v. United Air Lines Inc.*, 186 F.3d 1301, 1310 (10th Cir. 1999) (the filing is a prerequisite to a civil suit under Title VII and claim is time-barred if it is not filed within these time limits). Since Charging Party has alleged that his charges go back to 2021, those untimely claims are time-barred and any effort to salvage those untimely claims through reliance on a "continuing violation" theory of recovery is unpersuasive. Before 2002, the Tenth Circuit recognized a limited exception to the exhaustion requirement when the unexhausted claim was for discrimination reasonably related to timely allegations in the EEOC charge. *See Davidson v. America Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003). In *Martinez v. Potter,* 347 F.3d 1208 (10th Cir. 2003), however, the Tenth Circuit declared the "Supreme Court's recent pronouncement in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S. Ct. 2061 153 L.Ed.3d 106 (2002), has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions." *Martinez,* 347 F.3d at 1210. Since then, the Tenth Circuit's "decisions have unambiguously recognized *Morgan* as rejecting application of the 'continuing violation' theory." *Id.* at 2011 (citing *Davidson v. America Online, Inc.,* 337 F.3d 1179, 1184 (10th Cir. 2003).

> We agree with the government that such unexhausted claims involving discrete employment actions are no longer viable. *Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted.

*Martinez,* 347 F.3d at 1210.

All of Charging Party's allegations related to the "First Investigation" were known or should have been known to Charging Party in 2021. Indeed, the allegations in his Charge demonstrate his actual knowledge of the investigation and the alleged actions of the City at that time, which he now claims to be discriminatory. *See* Charge, ¶¶ 14-39. These discrete acts of alleged discrimination were fully known to Charging Party at the time and remained unreported for more than 300 days. Therefore, any claims contained in the present Charge that rely on events that occurred more than 300 days before his charge of discrimination, including the "first investigation" described in Charge paragraphs 10-76, are time barred. *Id.*

Matthew Nitta
July 26, 2023
Page 6

### B. Discrimination Claims

While Charging Party checked multiple boxes on his EEOC Charge form alleging discrimination based on sex, race, national origin, and age, his Charge is devoid of any alleged discriminatory conduct, or factual and evidentiary support sufficient to establish a claim of discrimination based on any of those protected characteristics. To establish a *prima facie* case of discrimination under Title VII, Charging Party must show that: (1) he is a member of a protected class; (2) he was qualified for the position he held and was performing satisfactorily; (3) he suffered an adverse employment action; and (4) the adverse action occurred in circumstances giving rise to an inference of discrimination. *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266-68 (10th Cir. 2015); *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007), citing *Sorbo v. United Parcel Service*, 432 F.3d 1169, 1173 (10th Cir. 2005); *Hysten v. Burlington Northern and Santa Fe Railway Company*, 296 F.3d 1177, 1181 (10th Cir. 2002) *Alfonso v. SCC Pueblo Belmont Operating Co., LLC*, 912 F.Supp.2d 1018, 1025-26 (D. Colo. 2012).

If the charging party successfully makes out a *prima facie* case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse action. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). If the employer can offer such a reason, the charging party then must provide evidence showing that race or sex was "a determinative factor in the defendant's employment decision or show that the defendant's explanation for its action was merely pretext." *Id.*

One method by which an employee can demonstrate an inference of discrimination is to show that the employer treated similarly situated employees more favorably. *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011), *citing E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800-01 (10th Cir. 2007). Additionally, the Age Discrimination in Employment Act ("ADEA") requires "'but-for' causation; therefore, a plaintiff claiming age discrimination must establish by a preponderance of the evidence that his employer would not have taken the challenged employment action but for the plaintiff's age." *Locke v. Grady Cty.*, 437 F. App'x. 626, 629 (10th Cir. 2011).

In this case, Charging Party has failed to alleged facts sufficient to meet even the initial burden of a *prima facie* case of discrimination.

#### 1. Sex, Race, and National Origin Claims

Regarding the first two elements required to establish a *prima facie* case of discrimination, Charging Party alleges (and the City agrees) that he is a "white, non-Asian male." *See* Charge, ¶ 215. The City also concedes that Charging Party is qualified for the position he holds and at all times relevant, is performing satisfactorily. No further information about Charging Party's protected status has been alleged. Presumably, Charging Party is claiming to be a white, Caucasian male employee of the City.

Matthew Nitta
July 26, 2023
Page 7

   To be clear, Charging Party is asserting a "reverse discrimination" claim of discrimination. In support of his reverse discrimination claim, Charging party has alleged one single paragraph to support his claims of reverse discrimination based on his "male" gender, "white" race and "non-Asian" national origin. *Id.* In a reverse discrimination charge, Charging Party faces an even more demanding standard for establishing a *prima facie* case of discrimination. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006); *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992). Whereas the first element necessary to establish a *prima facie* case of discrimination in the standard case requires evidence that the plaintiff "belongs to some protected class," a plaintiff alleging reverse discrimination must instead "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Argo, id. at 1202, citing Notari, id.* Alternatively, a plaintiff can produce evidence that would support a reasonable inference that the challenged decision would not have occurred but for his majority status. *Argo, id., citing Notari, id.* at 590. Charging Party fails to provide any reasonable justification for either inference.

   Charging Party also speculates that "prior dismissals of males, upon *information and belief*, do not resemble what [McCann] did in this case" Charge, ¶ 216 (emphasis added). This averment fails to provide any specific factual information and ignores the fact that Charging Party was not dismissed from his employment in this case. Therefore, his attempt to identify facts supporting disparate treatment of similarly situated individuals is unsupported by facts and entirely irrelevant in its comparison. This speculative, unsupported statement does nothing to meet his burden of showing the City is one of those unusual employers who discriminates against the majority." *Argo, id. at 1202.*

   Finally, Charging Party alleges that he "has serial knowledge" of men who were criminally charged with false reporting, "which substantiates animus toward [Charging Party]." *See* Charge, ¶ 217. Presumably, Charging Party believes that since the Jefferson County DA decided not to charge ▮▮▮▮ with false reporting, and the DDA has been known to charge men with false reporting, this somehow proves a discriminatory motive against Charging Party. These bare assertions do not begin to establish reverse discrimination based on similarly situated employees. *See Luster*, 667 F.3d at 1095, *citing PVNF, L.L.C.*, 487 F.3d at 800-01. Moreover, charging decisions made by the Jefferson County DA have no relevance to previous charging decisions made by the DDA in unrelated criminal matters, and cannot be used in an effort to show a pattern of discriminatory practices within the City. These disjointed and speculative assumptions represent the sum and substance of Charging Party's sex, race and national origin claims. There are no other allegations to establish Charging Party's own national origin, and no allegations of evidence showing a pattern of preferential treatment toward non-white female employees in general, or Asian women specifically. In sum, Charging Party presents no evidence whatsoever to support an inference that the City is one of those unusual employers who discriminates against the majority." *Argo, id. at 1202.*

   Additionally, Charging Party cannot satisfy the third prong of a *prima facie* case of reverse discrimination, which requires a showing that he suffered from an adverse employment action. An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing

Matthew Nitta
July 26, 2023
Page 8

a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (internal quotation omitted). Here, Charging Party claims that on August 22, 2021, he was "involuntarily transferred" from Courtroom 4H (room 8.C.6) to Courtroom 5F (room 8.G.8). See Charge, ¶ 35. A change in office or cubicle assignments, without any substantial change in duties, pay or status, cannot satisfy the *prima facie* requirement showing an adverse employment action. *Id.*

Moreover, the change in office assignment took place on August 22, 2021, which was more than 300 days before Charging Party filed his EEOC Charge. Even if a change in office assignments could satisfy the adverse action requirement, the August 2021 move took place more than 300 days before the filing of the charge and is therefore untimely for purposes of an administrative appeal. *See* 42 U.S.C. § 2000e-5(e)(1); *Morgan*, 536 U.S. at 122. Charging Party makes no other specific allegation of an actual change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. He simply claims he was embarrassed and upset by the allegation. The City has an obligation to investigate all claims of sexual harassment. The City met that responsibility by taking action quickly, separating the involved parties, completing the investigation in only two weeks, and terminating the culpable individual. ▮▮▮▮ was fired, not the Charging Party. The Charging Party's employment status was not changed in any material way.

Finally, Charging Party cannot satisfy the fourth and final requirement, showing the adverse action occurred in circumstances giving rise to an inference of reverse discrimination. *Bennett*, 792 F.3d at 1266-68. It goes without saying that since no adverse action took place, there can be no showing that it occurred in circumstances giving rise to an inference of reverse discrimination.

Even if Charging Party could make a better showing in his initial burden, the City has a legitimate non-discriminatory reason for its actions. *See Garrett*, 305 F.3d at 1216. A complaint was filed by ▮▮▮▮, and regardless of its ultimate lack of merit, the City was under an obligation to fully investigate the matter without bias or favor toward any individual. Under the burden shifting matrix of *McDonnell Douglas*, the burden would shift back to Charging party to show that the City's actions were a pretext for reverse discrimination. As discussed above, there is no evidence of pretext because there was no adverse action. *Id.*

   2. **Age Discrimination**

Charging party's age discrimination is even more sparse than his reverse discrimination claim. While Charging party "checked the box" for age discrimination, that is where his claim begins and ends. Charging Party does not allege his own age or the ages of any individuals he believes were treated more favorably. In fact he makes no references to age anywhere in his Charge (except by checking the box on the form). It is as if Charging Party abandoned his age discrimination claim, or as if one never existed. In any event, this claim should be rejected based on Charging Party's failure to plead a recognizable claim.

Case No. 1:24-cv-03468-RMR-MEH   Document 1-3   filed 12/16/24   USDC Colorado
pg 9 of 10

Matthew Nitta
July 26, 2023
Page 9

### C. Retaliation Claim

Charging Party's retaliation claim is as puzzling as his age discrimination claim. To establish a *prima facie* claim for retaliation, Charging party must establish three elements: (1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action. *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015), *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008). Once again, Charging Party fails to present a *prima facie* claim of retaliation.

The fundamental failure of Charging Party's discrimination claim is that he does not allege participation in any protected activity. While he protested the manner in which the investigation was conducted, he never reported a violation based on reverse discrimination until filing his EEOC Charge. To constitute protected activity, Charging Party must report the alleged conduct and have had a reasonable, good-faith belief that the reported conduct violated Title VII. *McGowan v. Bd. of Trustees for Metro. State Univ. of Denver*, 114 F. Supp. 3d 1129, 1139 (D. Colo. 2015), *aff'd sub nom.*, 645 F. App'x 667 (10th Cir. 2016). Complaints about "unfair treatment in general" and "dissatisfaction" do not constitute the requisite 'protected conduct' for a *prima facie* case of retaliation. *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001) (a complaint that did not specifically assert age discrimination failed to constitute "protected conduct" for a retaliation claim under the ADEA); *see also Hinds*, 523 F.3d at 1203 ("[a]lthough no magic words are required ... [g]eneral complaints about company management and one's own negative performance evaluation" do not constitute protected activity); *Timmons v. Lockheed Martin Corp.*, No. 11-CV-03408-CMA-KMT, 2013 WL 2467705, at *4 (D. Colo. June 7, 2013). A vague reference to discrimination will not support a retaliation claim. *See Lucas v. Office of Colorado State Pub. Def.*, No. 15-CV-00713-CBS, 2016 WL 9632933, at *12 (D. Colo. Aug. 25, 2016), *aff'd*, No. 16-1378, 2017 WL 3328029 (10th Cir. Aug. 4, 2017) (conversations regarding discriminatory conduct without reference to discrimination being based on employee's race or gender are not protected activity); *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004) (a vague reference to discrimination and harassment without any indication that this misconduct was motivated by race (or another category protected by Title VII) does not constitute protected activity and will not support a retaliation claim).

Similar to the cases cited above, Charging Party's push-back about the investigation is nothing more than statements of disagreement with the manner in which the investigation was conducted and dissatisfaction with perceived delays in getting to the truth.

Even if Charging Party's dissatisfaction with the investigation was considered protected conduct, his allegations do not meet the second element of a retaliation claim - that he suffered an adverse action. As discussed above, no adverse action was visited upon Charging Party. And finally, even if Charging party could prove that he engaged in protected conduct and suffered an adverse action, he cannot show a causal connection between the two. Title VII retaliation claims require an employee to demonstrate that, but for his protected activity, he would not have faced the alleged adverse employment action. *See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015). Evidence of the requisite but-for causation "must be based on more

Matthew Nitta
July 26, 2023
Page 10

than mere speculation, conjecture, or surmise." *Ward v. Jewell*, 772 F.3d 1199, 1202 (10th Cir. 2014). The Tenth Circuit has indicated that the temporal relationship between the protected opposition and the adverse employment action must be close. *See Haynes v. Level 3 Communications Inc.*, 456 F.3d 1215, 1228 (10th Cir. 2006); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999). A period of three months or longer will not be a sufficiently close temporal relationship to infer causality without other evidence. *Anderson*, 181 F.3d at 1179. *See also Finn v. Suncor Energy*, No. 12-CV-3024-JLK, 2014 WL 2993647, at *6 (D. Colo. July 3, 2014).

Here, there is no causal connection – let alone a "but for" causal connection – between Charging Party's criticisms about the investigation and any perceived adverse action, such as the office reassignment. The reassignment took place in 2021 and the investigation took place from October 17, 2022 to November 1, 2022. Simply put, there is no causal connection between the two, or any other perceived slight or hurt feelings Charging may have suffered.

Finally, even assuming Charging Party could make out a prima facie case of retaliation, he cannot demonstrate that the City's articulated reasons for the investigation are merely a pretext for a desire to embarrass or humiliate Charging Party. Simply put, Charging Party's retaliation claims fail, and the EEOC should reject his Charge.

## V. CONCLUSION

For the foregoing reasons, Charging Party's allegations of unlawful reverse discrimination and retaliation are utterly without merit. Accordingly, the City respectfully requests that the EEOC issue a no-cause finding dismissing the subject Charge. Should Charging Party provide any additional information, please contact me so that the City may submit an appropriate response. If I can provide you with any additional information, please do not hesitate to contact me. We look forward to working with you to resolve this Charge.

Respectfully submitted,

CITY AND COUNTY OF DENVER

Charles T. Mitchell
Assistant City Attorney